UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY GRACZYK, DON DAVIS and
JERRY RIDDLE, for themselves and all
others similarly situated,

                          Plaintiffs,

            v.

VERIZON COMMUNICATIONS, INC. and
PS SPLICING, LLC,

                          Defendants.

**ORDER**

18 Civ. 6465 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            In this putative class and collective action, Plaintiffs allege that Defendants

Verizon Communications, Inc. and PS Splicing, LLC violated the Fair Labor Standards Act (the

"FLSA"), the District of Columbia Minimum Wage Act and Wage Payment and Collection Act

by failing to pay Plaintiffs and similarly situated employees overtime compensation.  (Cmplt.

(Dkt. No. 1) ¶ 1)  Plaintiffs Rodney Graczyk, Don Davis, and Jerry Riddle worked as

replacement workers for Verizon Communications subsidiaries in Washington, D.C. between

April and June 2016, when unionized workers employed by Verizon Communications'

subsidiaries were on strike.  (Id. ¶¶ 7-9; Harris Decl. (Dkt. No. 58) ¶ 9)

            Verizon Communications has moved to dismiss under Fed. R. Civ. P. 12(b)(1),

12(b)(3), and 12(b)(6) (Notice of Motion (Dkt. No. 68)), arguing, inter alia, that venue is not

proper in this District because no events relating to Plaintiffs' claims occurred in this District or

in New York State.  (Verizon Br. (Dkt. No. 69) at 7-13)[1]  For the reasons stated below, Verizon

---

[1]  Citations to page numbers correspond to the pagination generated by this District's Electronic
Case Files ("ECF") system.

Communications' motion will be granted to the extent that this case will be transferred to the United States District Court for the District of Columbia.[2]

Plaintiffs have also filed a motion to seal.  (Dkt. No. 73)  That motion is denied as to Plaintiff's opposition brief, but granted as to exhibits attached to the Jeremiah Frei-Pearson declaration (Dkt. No. 44), which will be redacted as explained below.

## BACKGROUND

## I.    FACTUAL ALLEGATIONS

According to the Complaint, on April 13, 2016, approximately 36,000 "Verizon" "wireline" associates went on strike.[3]  (Cmplt. (Dkt. No. 1) ¶ 13)  Wireline workers service

---

[2]  Because venue does not lie in this District, and because the case will be transferred, the Court does not reach Verizon Communications' remaining arguments for dismissal.  See, e.g., McGraw-Hill Companies Inc. v. Jones, No. 12-CV-7085 (AJN), 2014 WL 988607, at *1 (S.D.N.Y. Mar. 12, 2014) ("[Defendants] also move to dismiss each claim, to the extent it is asserted against them, for failure to state a claim under Rule 12(b)(6).  The Court determines that transfer is warranted and therefore need not reach Defendants' motions on personal jurisdiction or the merits."); De Ratafia v. Cty. of Columbia, No. 12 CIV. 5457 (LAP) (DCF), 2013 WL 603128, at *3 n.6 (S.D.N.Y. Feb. 7, 2013) ("Because the Court need not reach the merits of Plaintiffs' . . . claims . . . to resolve the . . . Defendants' motion to dismiss for improper venue, the Court declines at this time to address the arguments made in the . . . motions to dismiss in this regard."); Safety Software Ltd. v. Rivo Software, Inc., No. 11 CIV. 7433 (KBF), 2012 WL 1267889, at *1 (S.D.N.Y. Apr. 11, 2012) ("[D]efendant's motion to dismiss for lack of personal jurisdiction and improper venue is GRANTED.  The Court thus need not reach defendant's alternative 12(b)(6) argument.").
[3]  The Complaint refers to defendant Verizon Communications as "Verizon."  (Cmplt. (Dkt. No. 1) ¶ 3)  As explained below, however, many of the Complaint's "Verizon"-related allegations plainly concern the conduct of Verizon Communications' subsidiaries, not Verizon Communications itself.

Because courts "'may consider materials outside the pleadings on a motion to dismiss for improper venue,'" Sabol v. Bayer Healthcare Pharm., Inc., No. 18 CIV. 11169 (VM), 2020 WL 705170, at *14 (S.D.N.Y. Feb. 12, 2020) (quoting Caremark Therapeutic Servs. v. Leavitt, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005)), the Court has considered declarations submitted by Defendant concerning the nature of Verizon Communications and the entities who contractually engaged Plaintiffs.  Those unrebutted declarations make clear that Verizon Sourcing LLP entered into the contracts through which Plaintiffs were hired.  (Alfasi Decl. (Dkt. No. 72) ¶ 3; Frei-Pearson Decl. Exs. A-H (Dkt. No. 44); Order (Dkt. No. 95) at 2)  Accordingly, most of the

copper and fiber cables used to provide cable television, telephone, and internet services to Verizon customers.  (Id. ¶ 18)  That same day, Verizon announced that it would hire hundreds of replacement wireline workers to ensure the continuity of its operations.  (Id. ¶ 14)  The replacement workers were immediately available when the strike began, because Verizon had made extensive advance preparations to hire substitute workers before the strike.  (Id. ¶ 15)  Verizon trained most of the replacement wireline workers at a Verizon facility in Northern Virginia.  (Id. ¶ 16)

PS Splicing – a limited liability company based in Oxford, North Carolina – provides services to telecommunications companies such as Verizon.  (Id. ¶ 11)  Pursuant to a contract with Verizon,[4] PS Splicing allegedly hired replacement workers – including Plaintiffs – to perform work for Verizon during the strike.  (Id. ¶¶ 19-20)

According to the Complaint, Defendants jointly employed Plaintiffs and acted as "an integrated enterprise with inter-related operations, systems, policies, practices and labor relations."  (Id. ¶ 32)   Defendants jointly set Plaintiffs' wages and controlled the policies and procedures relating to the payment of wages.  (Id. ¶ 37)  Defendants allegedly classified and paid Plaintiffs as independent contractors, even though they were employees.  (Id. ¶ 22)

Plaintiffs Graczyk, Davis, and Riddle are citizens of Florida, South Carolina, and Ohio, respectively.  (Id. ¶¶ 7-9)  They worked as replacement wireline workers in Washington,

_____

Complaint's allegations would more properly be lodged against that entity.  Verizon Communications is a holding company with ten employees that "provides no services of any kind to the public."  (Harris Decl. (Dkt. No. 58) ¶¶ 4, 8)

Accordingly, the Court understands the term "Verizon" – as used in the Complaint – to refer primarily to subsidiaries of Verizon Communications, such as Verizon Sourcing LLP, and the Court's use of the term "Verizon" should be understood in that context.
[4]  As noted above, Verizon Sourcing, not Verizon Communications, entered into this contract.  (Supra at 2-3 n.3)

D.C. between April 13 and June 30, 2016.  (Graczyk Decl. (Dkt. No. 45) ¶ 2; Davis Decl. (Dkt. No. 46) ¶ 2; Riddle Decl. (Dkt. No. 47) ¶ 2)  They serviced Verizon's copper and fiber cabling, and attended meetings, completed paperwork, maintained work vehicles, and stocked vehicles with inventory and supplies.  (Cmplt. (Dkt. No. 1) ¶¶ 18, 26)  They earned $75 per hour and regularly worked 90 or more hours per week, but they did not receive overtime compensation for weeks in which they worked more than 40 hours.  (Id. ¶¶ 1, 28-30)  On May 30, 2016, Verizon reached a tentative agreement with its striking wireline employees, and the replacement workers were laid off.  (Id. ¶ 17)

Plaintiffs seek to pursue their FLSA claims as a collective action on behalf of "[a]ll individuals employed by Defendants as replacement wireline workers in Connecticut, Delaware, the District of Columbia, Maryland, Massachusetts, New York, Rhode Island or Virginia between April 1, 2016 and June 30, 2016 who were not paid overtime premium wages for their overtime work."  (Id. ¶ 53)  Plaintiffs seek to pursue their D.C. wage and hour claims as a class action on behalf of "[a]ll individuals employed by Defendants as replacement wireline workers in the District of Columbia between April 1, 2016 and June 30, 2016 who were not paid overtime premium wages for their overtime work."  (Id. ¶ 60)

## II.   PROCEDURAL HISTORY

The Complaint was filed on July 17, 2018.  (Cmplt. (Dkt. No. 1))  On October 24, 2018, PS Splicing filed an answer which asserts improper venue as an affirmative defense. (Answer (Dkt. No. 30) at 17 ¶ 2)  In an October 26, 2018 letter, Verizon Communications requested a pre-motion conference concerning its anticipated motion to dismiss or transfer. (Verizon Ltr. (Dkt. No. 31))  On January 3, 2019, the Court conducted a conference concerning Verizon Communications' application.  (Tr. (Dkt. No. 97))  The Court granted Plaintiffs one

week to amend their complaint in light of Verizon Communications' arguments for dismissal or transfer.  (Id. at 5)  Plaintiffs never filed an amended complaint, however.

On January 28, 2019, Plaintiffs moved for an order conditionally certifying the FLSA collective and authorizing the dissemination of court-authorized notice to all similarly situated employees under the FLSA's "opt-in" mechanism.  (Notice of Motion (Dkt. No. 42); Pltf. Br. (Dkt No. 43) at 24) (citing 28 U.S.C. § 216(b))  On March 22, 2019, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6).  In its motion, Verizon Communications argues, inter alia, that venue is improper and that all claims against it should be dismissed because it was not involved in the alleged wage and hour violations.

On September 20, 2019, this Court denied Plaintiffs' motion for conditional certification and dissemination of court-authorized notice because Verizon Communications' motion to dismiss had raised "a substantial issue as to whether [it] is a proper party to this case."[5] (Order (Dkt. No. 95) at 2)

---

[5] Defendant PS Slicing did not join Verizon Communications' motion to dismiss.  On June 18, 2019, Plaintiffs and PS Slicing sought court approval of a settlement that would resolve all claims against PS Splicing for $22,500.  (Jnt. Ltr. (Dkt. No. 83) at 1-2) (citing Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015))  Verizon Communications has objected to the settlement.  (Verizon Ltr. (Dkt. No. 87))  According to Verizon Communications, the applicable contractual agreements (to which Verizon Sourcing LLP, not Verizon Communications, is a party) prohibit subcontractors such as PS Splicing from classifying replacement workers as independent contractors.  (Id. at 1)

Verizon Communications argues that it would be unfairly prejudiced by the settlement given that it would absolve PS Splicing of liability beyond the $22,500 settlement amount, even though PS Splicing violated the applicable contractual provisions by classifying the replacement workers as independent contractors.  (Id. at 2)  Verizon Communications also notes that the settlement, as written, would dismiss PS Splicing from the lawsuit and bar future cross-claims or third-party claims against PS Splicing.  (Id. at 3)  This Court will not address the propriety of the settlement, given that this case was improperly filed in this District and will be transferred.

## DISCUSSION

### I.     LEGAL STANDARD

Under 28 U.S.C. § 1391(b), the general venue statute, unless otherwise provided by law, a federal civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Only subsections (1) and (2) are relevant here.[6]

For venue purposes, a "natural person" resides in the judicial district where the person is "domiciled," and any other "entity with the capacity to sue and be sued . . . , if a defendant, [resides] in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(1), (2).

Under Section 1391(b)(2), venue is not restricted "to the district in which the 'most substantial' events or omissions giving rise to a claim occurred[;] [r]ather, . . . § 1391(b)(2) 'contemplates that venue can be appropriate in more than one district' and 'permits venue in multiple judicial districts as long as a "substantial part" of the underlying events took place in those districts.'"  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005)) (citations omitted).

---

[6]  As discussed below, the Complaint premises venue on subsection (1), while Plaintiffs' opposition brief relies on subsection (2).  Because venue would clearly lie in the District of Columbia, subsection (3) is inapplicable.

The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial,'" however, and to "construe the venue statute strictly." Glasbrenner, 417 F.3d at 357 (citing Olberding v. Ill. Cent R.R., 346 U.S. 338, 340 (1953)). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel, 428 F.3d at 432-33 (citing Glasbrenner, 417 F.3d at 357; Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 295-96 (3d Cir. 1994)). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." Id. at 433 (citing Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003)).

"[W]hen a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate.  First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'" Daniel, 428 F.3d at 432 (quoting Glasbrenner, 417 F.3d at 357) (citations omitted).

"Courts may consider materials outside the pleadings when deciding a motion to dismiss for improper venue under Rule 12(b)(3). . . ." Brennen v. Phyto-Riker Pharm., Ltd., No. 01 CIV. 11815 (DLC), 2002 WL 1349742, at *1 n.2 (S.D.N.Y. June 20, 2002) (citing New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)). "The Court 'must take all allegations in the complaint as true, unless contradicted by the defendants'

affidavits.'" <u>Rankel v. Kabateck</u>, No. 12 Civ. 216 (VB), 2013 WL 7161687, at *2 (S.D.N.Y.

Dec. 9, 2013) (quoting <u>U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.</u>, 162 F. Supp.

2d 173, 183 (S.D.N.Y. 2001)).  "Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has

the burden of pleading venue."  <u>Pers. v. Google Inc.</u>, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).

Where, as here, neither side has requested an evidentiary hearing, a court may "'rely on

pleadings and affidavits, [and] the plaintiff need only make a <u>prima facie</u> showing of [venue].'"

<u>Glasbrenner</u>, 417 F.3d at 355 (citations omitted).

## II.   <u>ANALYSIS</u>

### A.   <u>Section 1391(b)(1)</u>

The Complaint asserts venue under Section 1391(b)(1), based on the allegation

that Verizon Communications is headquartered in New York City.  (Cmplt. (Dkt. No. 1) ¶ 6)

But this subsection provides that venue is proper in "a judicial district in which any defendant

resides, if <u>all</u> <u>defendants</u> are residents of the State in which the district is located."  28 U.S.C.

§ 1391(b)(1) (emphasis added).  PS Splicing is based in North Carolina, not New York.  (Cmplt.

(Dkt. No. 1) ¶ 11)  Because not "all defendants" are "residents of the State in which [this]

[D]istrict is located," Plaintiffs' attempt to assert jurisdiction under Section 1391(b)(1) fails.

In apparent recognition of this fact, Plaintiffs' opposition brief relies exclusively

on Section 1391(b)(2), and makes no reference to Section 1391(b)(1).  (Pltf. Opp. (Dkt. No. 75)

at 12); <u>cf. Gomez v. Westchester County</u>, No. 19 CV 1335 (VB), 2020 WL 635577, at *4

(S.D.N.Y. Feb. 11, 2020) ("Federal courts have the discretion to deem a claim abandoned when a

defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers

defendants' arguments for dismissing such a claim.").

B.      **Section 1391(b)(2)**

        In their opposition brief (Dkt. No. 75 at 12), Plaintiffs contend that venue is
proper under Section 1391(b)(2), which applies when a "substantial part of the events or
omissions giving rise to the claim occurred" in the relevant judicial district.  28 U.S.C.
§ 1391(b)(2).  Here, Plaintiffs performed the work that gives rise to their wage and hour claim in
the District of Columbia, not the Southern District of New York.  (Cmplt. (Dkt. No. 1) ¶¶ 7-9)
Moreover, Plaintiffs are citizens of Florida, South Carolina, and Ohio – not New York.  (Id.)
And, as noted above, Defendant PS Splicing is based in North Carolina.  (Id. ¶ 11)

        Defendant Verizon Communications is headquartered in the Southern District of
New York.  (Id. ¶ 6)  But the location of a party's offices – standing alone – is insufficient to
establish venue under Section 1391(b)(2).  See, e.g., Bay Ridge Mech. Corp. v. JPK Drafting &
Design LLC, No. 16-CV-4666 (JPO), 2017 WL 74734, at *2 (S.D.N.Y. Jan. 4, 2017) ("Even
though Bay Ridge was located in New York, its presence is alone insufficient to support
venue."); Fisher v. Int'l Student Exch., Inc., 38 F. Supp. 3d 276, 285 (E.D.N.Y. 2014) (finding
improper venue even though defendant's "corporate headquarters" were in New York, because
the actors responsible for the conduct giving rise to plaintiff's claims were based in Montana);
see also Schwarz v. I.R.S., 998 F. Supp. 201, 203 (N.D.N.Y. 1998) (venue improper even though
defendant maintained a regional office in the district, because personnel in that office were "not
alleged to have engaged in any substantial part of the activity complained of in plaintiff's
complaint").

        Plaintiffs contend, however, that the Complaint's allegations concerning Verizon
Communications are sufficient to establish venue in this District.  (Pltf. Opp. at 12 (citing Cmplt.
(Dkt. No. 1) ¶¶ 3, 7-9, 14, 16, 20, 22-26, 31-52)  As discussed above, however, the Complaint's

allegations largely concern the conduct of Verizon Communications' subsidiaries – not Verizon Communications itself.  For example, the Complaint defines Verizon Communications as "Verizon," and alleges that "around 36,000 Verizon wireline associates went on strike" in April 2016 (Cmplt. (Dkt. No. 1) ¶ 13)  But the unrebutted declarations submitted by Verizon Communications make clear that Verizon Communications is a holding company with only ten employees, all of whom are company executives or their assistants.  (Harris Decl. (Dkt. No. 58) ¶ 8)  The employees who went on strike worked for Verizon Communications' subsidiaries – none of which are named defendants.  (Id. ¶ 9)  Plaintiffs' conclusory claim that Verizon Communications acted as Plaintiff's joint employer (Cmplt. (Dkt. No. 1) ¶¶ 31-52) is thus unsupported by the record and facially implausible.

Similarly, the Complaint alleges that the "principal job duty" of replacement wireline workers "was to service copper and fiber cabling used to provide cable television, telephone and internet services to Verizon [Communications] customers."  (Cmplt. (Dkt. No. 1) ¶¶ 3, 18)  Verizon Communications "does not operate, manage, repair, or service copper or fiber cable," however.  (Harris Decl. (Dkt. No. 58) ¶ 5)  Nor does it "operate, manage, or repair wireline telephone operations" or "provide[] . . . services of any kind to the public."  (Id. ¶ 4)  Only Verizon Communications subsidiaries provide services to customers.  (Id. ¶ 7)

The Complaint alleges that PS Splicing "was authorized to hire the Named Plaintiffs and Class members as replacement workers during the strike pursuant to its contract with Verizon [Communications]."  (Cmplt. (Dkt. No. 1) ¶¶ 3, 20)  But only Verizon Sourcing – not Verizon Communications – was a party to the contracts through which the replacement workers were hired.  (Alfasi Decl. (Dkt. No. 72) ¶ 3; Frei-Pearson Decl., Exs. A-H (Dkt. No. 44); Order (Dkt. No. 95) at 2)  Unlike Verizon Communications, Verizon Sourcing is a Delaware

limited liability company based in New Jersey.  (Harris Decl. (Dkt. No. 58) ¶ 13)  Moreover,

Michael Alfasi – a Verizon Sourcing contract coordinator responsible for negotiating the

contracts pursuant to which Plaintiffs were hired – has affirmed that, to his knowledge, no work

related to those contracts occurred in New York.  (Alfasi Decl. (Dkt. No. 72) ¶¶ 4-6)  Instead,

most of the work related to these contracts took place in Virginia or Texas.  (Id. ¶¶ 4, 6)

Plaintiffs have not alleged otherwise.

       In their opposition, Plaintiffs assert that the Complaint alleges that Verizon

Communications "used its wholly owned subsidiaries (i.e., Verizon Sourcing) to secure these

replacement wireline workers."  (Pltf. Opp. (Dkt. No. 75) at 12)  The Complaint, however,

contains no allegations about Verizon Sourcing, or the relationship between Verizon

Communications and Verizon Sourcing (or any other subsidiary) – much less allegations that any

of Verizon Communications' alleged acts or omissions occurred in this District so as to establish

venue here under Section 1391(b)(2).  See Gulf Ins., 417 F.3d at 357 ("[F]or venue to be proper,

significant events or omissions material to the plaintiff's claim must have occurred in the district

in question. . . .") (emphasis in original).  For these reasons, venue does not lie in the Southern

District of New York.

## III.    WHETHER THIS CASE SHOULD BE DISMISSED OR TRANSFERRED

       "If venue is improper in the federal district court in which the action was filed, the

decision whether to transfer or dismiss is evaluated under 28 U.S.C. § 1406(a) and 'lies within

the sound discretion of the district court.'"  Pisani v. Diener, No. 07-CV-5118 JFB/ARL, 2009

WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) (quoting Minnette v. Time Warner, 997 F.2d 1023,

1026 (2d Cir. 1993)).  Section 1406(a) states that "[t]he district court of a district in which is

filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

of justice, transfer such case to any district or division in which it could have been brought."  28

U.S.C. § 1406(a).  "A 'compelling reason' for transfer is generally acknowledged when a

plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."  Gonzalez v.

Hasty, 651 F.3d 318, 324 (2d Cir. 2011) (quoting Moreno-Bravo v. Gonzales, 463 F.3d 253, 263

(2d Cir. 2006)).

      Verizon Communications argues that this case should be dismissed, because

Plaintiffs knew that venue did not lie in the Southern District of New York, but filed their action

here anyway, in an act of "jurisdictional gamesmanship."  (Verizon Br. (Dkt. No. 69) at 18)

Dismissal, however, is "a severe penalty that will not ordinarily be imposed where . . . the statute

of limitations has run."  Yanouskiy v. Eldorado Logistics Sys., Inc., No. 05-CV-2202, 2006 WL

3050871, at *7 (E.D.N.Y. Oct. 20, 2006).  Plaintiffs' wage and hour claims are subject to a two-

year or three-year statute of limitations.  See, e.g., Sims v. Sunovion Pharm., Inc., No. CV 17-

2519 (CKK), 2019 WL 690343, at *15 (D.D.C. Feb. 19, 2019) ("FLSA claims must be brought

within two years, or at most three years if the employer's violation was willful.  29 U.S.C. §

255(a).  Similarly, under the District of Columbia Minimum Wage Act, all claims must be

brought within three years.  D.C. Code § 32-1308(c)(1)."); Bilal-Edwards v. United Planning

Org., 15 F. Supp. 3d 1, 16-17 (D.D.C. 2013) ("The statute of limitations under . . . the District of

Columbia Wage Payment and Collection Law . . . is only three years.") (internal quotation marks

and alterations omitted).

      Here, the alleged wage and hour violations took place between April and June

2016 – more than three years ago.  Thus, if the Court were to dismiss the Complaint for improper

venue, Plaintiffs might be unable to re-file their claims in a proper venue.  The Court will not

subject Plaintiffs to this risk.  See Wood v. Byrd, No. 16-CV-8142 (KMK), 2020 WL 550787, at

*9 (S.D.N.Y. Feb. 4, 2020) (transferring rather than dismissing case because courts do not always toll the time that a case is pending before a court that lacks venue, and "[t]here is no reason to subject Plaintiff[] . . . to the possibility of such a result").

When deciding where to transfer a case, "courts in this Circuit are guided by the following set of nine factors:  (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances."  Catlin Indem. Co. v. New England Law/Bos., No. 15-CV-4836 (JMF), 2016 WL 447849, at *3 (S.D.N.Y. Feb. 4, 2016) (citing N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010); Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 404 (S.D.N.Y. 2004)).

In the event that this Court does not dismiss this action, Defendants have requested a transfer to the District of Columbia.  Plaintiffs do not dispute that venue would lie there.[7]  This Court finds that venue would lie in the District of Columbia under

---

[7]  Plaintiffs' preferred venue is not clear, because they declined to brief the issue.  In a footnote in their opposition brief, they state that "if the Court is inclined to consider transferring this action, Plaintiff respectfully request leave to submit a supplemental memo on this issue."  (Pltf. Opp. (Dkt. No. 75) at 12 n.4)  Plaintiffs' opposition brief is only 12 pages, however – well under this Court's 25-page limit.  Accordingly, Plaintiffs had an opportunity to address an alternative forum, but opted not to do so – even though their case for venue in the Southern District of New York was weak.  The Court will not entertain another round of briefing on this issue.  See, e.g., Zarelli v. New York City Bd. of Educ., No. 93 CV 2337 (FB), 1996 WL 599386, at *2 (E.D.N.Y. Oct. 14, 1996), aff'd, 199 F.3d 1325 (2d Cir. 1999) ("[P]iecemeal motion practice should be discouraged as contrary to the wise allocation of judicial resources."); Tilcon Minerals, Inc. v. Orange & Rockland Util., Inc., 851 F. Supp. 529, 531 (S.D.N.Y. 1994) ("Separate adjudication of piecemeal motions are not favored under the Federal Rules of Civil Procedure.").  By choosing not to respond to Verizon Communications' arguments about an alternative forum,

Section 1391(b)(2), because "a substantial part of the events or omissions giving rise to the claim occurred" in that district.  28 U.S.C. § 1391(b)(2).

Weighing the above-referenced factors, the Court also concludes that a transfer to the District of Columbia would be appropriate.  While the parties are spread out across various states, the locus of operative facts is in Washington, D.C., where Plaintiffs performed the work that gives rise to the alleged wage and hour violations.  See, e.g., Flood v. Carlson Restaurants Inc., 94 F. Supp. 3d 572, 579 (S.D.N.Y. 2015) ("[O]perative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations."); Bukhari v. Deloitte & Touche LLP, 12 Civ. 4290 (PAE), 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) (explaining that in wage and hour cases, "the locus of operative facts is the location of the alleged violations . . . , not the corporate headquarters" where the allegedly unlawful practices were developed); Amick v. Am. Exp. Travel Related Servs. Co., No. 09 Civ. 9780 (AKH), 2010 WL 307579, at *1 n.1 (S.D.N.Y. Jan. 26, 2010) (finding "center of gravity of the litigation" to be in the forum where the employee worked and the violations of federal and state law occurred, "even assuming [that the] improper compensation policy was developed at [defendant's] corporate headquarters").

Plaintiffs also assert violations of D.C. wage and hour laws – a body of law with which the U.S. District Court for the District of Columbia is undoubtedly familiar.  See Krizek v. Queens Med. Ctr., No. 18 Civ. 6481 (PGG), 2018 U.S. Dist. LEXIS 125378, *5 (S.D.N.Y. July 25, 2018) (transferring case to the District of Hawaii in part because "Hawaii law will govern

---

Plaintiffs have waived any argument against transfer to the District of Columbia.  Luv n' Care, Ltd. v. Shiboleth LLP, No. 13 Civ. 4720 (RRM) (LB), 2016 WL 11472221, at *3 (E.D.N.Y. Mar. 30, 2016) (party abandoned argument that venue was improper by "not . . . engag[ing]" on the issue).

Plaintiff's claims")  Finally, the Verizon Sourcing contracts that resulted in the hiring of replacement workers were signed in nearby Virginia (Alfasi Decl. (Dkt. No. 72) ¶ 4), where replacement workers were allegedly trained.  (Cmplt. (Dkt. No. 1) ¶ 16); see In re: Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig., 999 F. Supp. 2d 1375, 1376 (U.S. Jud. Pan. Mult. Lit. 2014) (finding venue to be proper in Kentucky in part because "many facilities are located in nearby states"); Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp., No. 12-CV-5141 (JMF), 2012 WL 5512164, at *3 (S.D.N.Y. Nov. 14, 2012) (denying transfer from New York to Connecticut in part because "the inconvenience of litigating in a neighboring state is minimal").  For these reasons, the Court concludes that this case should be transferred to the United States District Court for the District of Columbia.

## IV.    SEALING REQUEST

Pursuant to a confidentiality agreement entered into by the parties, Plaintiffs moved to seal portions of their opposition brief which refer to contracts that Verizon Sourcing used to hire replacement wireline workers.  (Pltf. Mot. to Seal (Dkt. No. 73); Pltf. Opp. (Dkt. No. 75) at 9, 9-10 n.3)  The underlying contracts are annexed to the Jeremiah Frei-Pearson declaration (Dkt. No. 44), which Plaintiffs filed as part of their motion for conditional class certification.

Verizon Communications does not oppose maintaining these contracts entirely under seal, but asks that if these contracts are unsealed, the financial terms of the contracts be redacted.  (Mar. 22, 2019 Verizon Ltr. (Dkt. No. 78); Feb. 11, 2019 Verizon Ltr.)  On February 11, 2019, Verizon Communications submitted versions of the contracts that include its requested redactions.

According to Verizon Communications, Verizon Sourcing paid its suppliers different amounts, and different types of fees, for similar services.  (Feb. 11, 2019 Verizon Ltr. at 3)  If vendors learned the terms of Verizon Sourcing's agreements with other vendors, Verizon Sourcing would suffer a competitive disadvantage in future negotiations with vendors.  (Id. Ex. A (O'Malley Decl.) ¶ 4(a))  These same vendors transact business with Verizon Sourcing's competitors.  (Id. ¶ 4(b))  If these competitors learned about the financial terms of the contracts, the competitors could undercut Verizon Sourcing in future negotiations with the vendors.  (Id.)

"The common law right of public access to judicial documents is firmly rooted in our nation's history."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).  "The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice."  Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).  That said, "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  Id.  (quoting In re New York Times Co., 828 F.3d 110, 116 (2d Cir. 1987)).

The Second Circuit has articulated a three-step process for determining whether sealing is appropriate.  First, a court must determine whether the presumption of access attaches.  A presumption of access attaches to any item that constitutes a "judicial document" – i.e., an "item . . . relevant to the performance of the judicial function and useful in the judicial process."  Id.  (internal quotation marks omitted).  Second, if the court determines that the item to be sealed is a judicial document, the court must then determine the weight of the presumption of access.  "[T]he weight to be given the presumption of access must be governed by the role of the material

at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. (internal quotation marks omitted). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (internal quotation marks omitted). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." Id. at 120 (internal quotation marks omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. (internal quotation marks omitted).

The contracts at issue here – which were submitted as part of Plaintiffs' motion for conditional class certification – are plainly "judicial documents." See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., No. 07-CV-2014, 2008 WL 199537, at * 16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents. . . ."). The financial information in those contracts, however, had no bearing on this Court's treatment of Plaintiff's motion for conditional class certification or on this Court's resolution of Verizon Communications' motion to transfer.[8]  Accordingly, the presumption in favor of public access is low. See, e.g., United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."); KeyBank Nat'l Ass'n v. Element Transp. LLC, No. 16 CIV. 8958

---

[8]  If the contracts' financial terms become important as this case proceeds, the transferee court is – of course – free to modify this Court's ruling concerning sealing. See, e.g., United States v. Davis, 702 F.2d 418, 423 (2d Cir. 1983) ("[M]odification of the sealing order was well within the lower courts' discretion.").

(JKK), 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) (document's "irrelevance to the issues before the Court . . . places the presumption of public access at the nadir of the continuum of the weight to be given to the presumption").

Verizon Communications has demonstrated that the redacted material contains sensitive information that, if disclosed, "'might harm [Verizon Sourcing's] competitive standing.'" Oliver Wyman, Inc. v. Eielson, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (quoting In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009)). Given these circumstances, the privacy interests outweigh the public's interest in the redacted material. Indeed, courts in this Circuit routinely permit parties to redact sensitive financial information akin to the material at issue here. See, e.g., In re Digital Music Antitrust Litig., 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) (concluding that "internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction"); McCracken v. Verisma Sys., Inc., No. 6:14-CV-06248(MAT), 2017 WL 4250054, at *4 (W.D.N.Y. Sept. 26, 2017) ("[T]he Court finds it appropriate to seal the . . . content identified . . . as sensitive proprietary or financial information. . . . [Defendant] has redacted only its confidential financial information from the . . . Declaration, thereby narrowly tailoring the amount of information that will be protected from public access."); Hesse v. SunGard Systems Intern., No. 12 Civ.1990 (CM) (JLC), 2013 WL 174403 at *2-3 (S.D.N.Y. 2013) (permitting the sealing of "billing rates and project pricing, as well as details of specific projects completed for several clients").

The Court has reviewed Verizon Communications' proposed redactions to the contracts and finds them reasonably tailored to protect sensitive financial information. Accordingly, Plaintiffs are directed to re-file the Jeremiah Frei-Pearson declaration (Dkt. No. 44) with exhibits that incorporate Verizon Communications' proposed redactions (as set forth in its

February 11, 2019 letter).  Because Plaintiffs' opposition brief does not contain sensitive

financial information, and because Verizon Communications has not asked that any portion of

the brief be redacted (Verizon Ltr. (Dkt. No. 78)), Plaintiffs should file an unredacted version of

their brief on the docket.

### **<u>CONCLUSION</u>**

For the reasons stated above, Defendant Verizon Communications' motion to

dismiss (Dkt. No. 68) is granted to the extent that this case is transferred to the United States

District Court for the District of Columbia.  Plaintiffs' motion to seal (Dkt. No. 73) is granted to

the extent that Plaintiffs will re-file the Jeremiah Frei-Pearson declaration (Dkt. No. 44) with

exhibits redacted consistent with the redactions in Verizon Communications' February 11, 2019

letter.  Plaintiffs' motion to seal is otherwise denied, and Plaintiffs should re-file their brief

opposing Verizon Communications' motion to dismiss (Dkt. No. 75) without redactions.

The Clerk of Court is directed to terminate Dkt. Nos. 68 and 73 and transfer this

case to the United States District Court for the District of Columbia.

Dated: New York, New York
       March 24, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge